U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR -4 2016

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ERIN LINCOLN, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JOHN LINCOLN, ET AL., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | NO. 4:15-CV-819-A |
| CITY OF COLLEYVILLE, TEXAS, ET AL., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motions of defendants (1) Detective Kyle Meeks ("Meeks") and Officer Sandra Scott ("Scott"), (2) Ranger Clair Barnes ("Barnes"), (3) City of North Richland Hills ("NRH"), Brian Goen ("Goen"), Loren Walden ("Walden"), and Dustin Black ("Black"), and (4) City of Colleyville ("Colleyville") to dismiss. The court, having considered the motions, the responses of plaintiffs, Erin Lincoln ("Erin") and Kathleen Lincoln ("Kathleen"), individually and as representatives of the Estate of John Lincoln ("John"), the replies, the record, and applicable authorities, finds that the motions of Meeks, Scott, and Barnes should be denied and that the motions of NRH, Goen, Walden, Black, and Colleyville should be granted.

I.

## Plaintiffs' Allegations

Plaintiffs' first amended complaint, Doc.[1] 37, says:

Plaintiffs' claims arise out of events that occurred on December 26, 2013. On that date, John, who was bipolar but not taking his medication, took a gun from his father's house. John's father believed that John was a threat to John's mother, Kathleen, who lived at a different address with John's eighteen-year-old daughter, Erin. John's father called John's sister Kelly, an Arlington Police Department officer. Kelly called Colleyville police to advise them of the situation. John's father also called John's sister Kim, who drove to her mother's house to intercept John. When Kim arrived at her mother's house, police had already surrounded it. Kim told police that Kathleen was not at home; that the only persons in the home were John and Erin; and, that John was bipolar and off his medication, but would never harm Erin. A SWAT team including officers from NRH and Colleyville arrived and spoke with Erin, who told them she was not in harm's way; that her father would never harm her; that she was trying to calm her father down; and, that the officers were upsetting him. John opened the door to the home with Erin standing at his side on several occasions to shout at police. At

---

[1] The "Doc" reference is to the number of the item on the court's docket in this action.

no time did he discharge the gun or threaten to do so. He did not leave the house or present a threat of harm to officers. On the last occasion that John opened the door, Goen, Walden, and Black opened fire, killing John. There were over thirty bullet holes into and through the door and walls of the home, ranging from eleven feet high to inches off the ground, causing substantial damage to the home.

At the time John was killed, Erin fell to the ground, crying out in terror. Police handcuffed Erin and put her into a police vehicle. Kelly, who was wearing her police uniform, was at the scene and informed the officers that Erin suffered severe social anxiety disorder and asked that Erin be released to her care. Meeks, Scott, and Barnes took Erin into custody without warrant, probable cause, or justifiable reason, aware that Erin was in extreme distress and that her family wanted to comfort her, and Scott transported her to the Colleyville police station. Meeks and Barnes interrogated Erin for five hours, preventing her from leaving and preventing her from having contact with her family.

It was the custom and practice of NRH and Colleyville to encounter persons suffering mental health crises in a manner that they knew would escalate the situation and need for force. Further, it was their custom and practice to ignore state mandated training regarding crisis intervention and, instead, use

3

excessive force. And, it was their custom and practice to use deadly force when there was no immediate threat of harm. In addition, these defendants failed to train or adequately supervise their officers with regard to encounters with the mentally ill.

Plaintiffs assert claims under 42 U.S.C. § 1983, for violation of the Americans with Disabilities Act ("ADA"), and for violation of section 504 of the Rehabilitation Act. Plaintiffs also assert survival and wrongful death claims.

II.

Grounds of the Motions

The individual defendant movants assert that plaintiffs have not pleaded sufficiently to overcome their right to qualified immunity.

NRH and Colleyville assert that plaintiffs have failed to sufficiently plead that customs or policies or failure to train caused plaintiffs' damages. Further, neither the ADA nor Rehabilitation Act applies to the facts of this case. And, Kathleen has failed to state a due process claim related to the damage to her property.

Each movant asserts that all claims against that movant should be dismissed.

4

III.

Applicable Legal Principles

A.   Pleading

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action.  Twombly, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the facts pleaded must allow

5

the court to infer that the plaintiff's right to relief is
plausible.  Iqbal, 556 U.S. at 678.  To allege a plausible right
to relief, the facts pleaded must suggest liability; allegations
that are merely consistent with unlawful conduct are
insufficient.  Id. In other words, where the facts pleaded do no
more than permit the court to infer the possibility of
misconduct, the complaint has not shown that the pleader is
entitled to relief.  Id. at 679. "Determining whether a complaint
states a plausible claim for relief . . . [is] a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense."  Id.

B.   Qualified Immunity

     Qualified immunity insulates a government official from
civil damages liability when the official's actions do not
"violate clearly established statutory or constitutional rights
of which a reasonable person would have known."  Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).  For a right to be "clearly
established," the right's contours must be "sufficiently clear
that a reasonable official would understand that what he is doing
violates that right."  Anderson v. Creighton, 483 U.S. 635, 640
(1987).  Individual liability thus turns on the objective legal
reasonableness of the defendant's actions assessed in light of
clearly established law at the time.  Hunter v. Bryant, 502 U.S.

224, 228 (1991); Anderson, 483 U.S. at 639-40.  In Harlow, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  457 U.S. at 818.  In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority, whether cited by the parties or not.  Elder v. Holloway, 510 U.S. 510, 512 (1994).  If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. Mullenix v. Luna, 136 S. Ct. 305, 308 (2015); Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).  "[A]n allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable.  Siegert v. Gilley, 500 U.S. 226, 231 (1991); Duckett

v. City of Cedar Park, 950 F.2d 272, 276-80 (5th Cir. 1992).   In

so doing, the court should not assume that plaintiff has stated a

claim, i.e., asserted a violation of a constitutional right.

Siegert, 500 U.S. at 232.   Rather, the court must be certain

that, if the facts alleged by plaintiff are true, a violation has

clearly occurred.   Connelly v. Comptroller, 876 F.2d 1209, 1212

(5th Cir. 1989).   A mistake in judgment does not cause an officer

to lose his qualified immunity defense.   In Hunter, the Supreme

Court explained:

> The qualified immunity standard "gives ample room for
> mistaken judgments" by protecting "all but the plainly
> incompetent or those who knowingly violate the law."
> Malley, [475 U.S.] at 343. . . .   This accommodation for
> reasonable error exists because "officials should not err
> always on the side of caution" because they fear being sued.
> . . .

502 U.S. at 229.

When a defendant relies on qualified immunity, the burden is

on the plaintiff to negate the defense.   Kovacic v. Villarreal,

628 F.3d 209, 211 (5th Cir. 2010); Foster v. City of Lake

Jackson, 28 F.3d 425, 428 (5th Cir. 1994).

C.   Municipal Liability

The law is clearly established that the doctrine of

respondent superior does not apply to § 1983 actions.   Monell v.

New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978);

Williams v. Luna, 909 F.2d 121, 123 (5th Cir. 1990).   Rather, the

8

misconduct of a subordinate must be affirmatively linked to the
action or inaction of the supervisor.  <u>Southard v. Texas Bd. of
Crim. Justice</u>, 114 F.3d 539, 550 (5th Cir. 1997).  A supervisor
may be liable under § 1983 if he, by action or inaction,
demonstrates deliberate indifference to a plaintiff's
constitutionally protected rights.  <u>Id.</u> at 551.  "'[D]eliberate
indifference' is a stringent standard of fault, requiring proof
that a municipal actor disregarded a known or obvious consequence
of his action."  <u>Board of Comm'rs of Bryan Cty. v. Brown</u>, 520
U.S. 397, 410 (1997).  Neither a supervisory official nor a
governmental entity can be held liable for failing to adopt
policies to prevent constitutional violations.  <u>See, e.g.</u>, <u>Vela
v. White</u>, 703 F.2d 147, 153 (5th Cir. 1983); <u>Reimer v. Smith</u>, 663
F.2d 1316, 1323 (5th Cir. 1981); <u>Wanger v. Bonner</u>, 621 F.2d 675,
680 (5th Cir. 1980).  Moreover, a plaintiff must allege more than
an isolated incident of purported harm to establish a claim
against such person or entity.  <u>Fraire</u>, 957 F.2d at 1278;
<u>McConney v. City of Houston</u>, 863 F.2d 1180, 1184 (5th Cir. 1989);
<u>Languirand v. Hayden</u>, 717 F.2d 220, 227-28 (5th Cir. 1983).
Without a pattern or practice of recurring constitutional
violations, neither negligence nor gross negligence suffices as a
basis for liability.  <u>Stokes v. Bullins</u>, 844 F.2d 269, 274 (5th
Cir. 1988).  There must be a link between the policy and the

9

particular constitutional violation alleged.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985).

A governmental entity can be subjected to monetary damages or injunctive relief only if one of its official policies caused a person to be deprived of a federally protected right.  Monell, 436 U.S. at 694. It cannot be held liable under a theory of respondeat superior or vicarious liability.  Id.  Instead, liability may be imposed against a local government entity under § 1983 only "if the governmental body itself subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."  Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 692) (internal quotation marks omitted).  To hold an entity liable under § 1983 thus requires plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted." Spiller v. City of Texas City, Police Dept., 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted). Therefore, liability against local government defendants pursuant to § 1983 requires proof of a policymaker, an official policy, and a violation of constitutional rights whose "moving force" is the policy or custom.  Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).

10

The Fifth Circuit has been explicit in its definition of an "official policy" that can lead to liability on the part of a governmental entity, giving the following explanation in an opinion issued en banc in response to a motion for rehearing in Bennett v. City of Slidell:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.
>
> Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

735 F.2d 861, 862 (5th Cir. 1984) (per curiam).

IV.

Analysis

A.   Meeks and Scott

Meeks and Scott address wrongful arrest and excessive force, Doc. 50, although it is clear that Erin is only asserting that they unlawfully detained her for an excessive period of time. Plaintiffs allege that Scott in effect arrested Erin and

11

transported her to the Colleyville police station and that Meeks interrogated Erin for five hours at the police station following the shooting death of her father and forced her to write out a statement. Doc. 37, ¶¶ 28, 58-59.

Plaintiffs allege that Erin, who was a witness to the events leading to the shooting of her father, was handcuffed and detained in a police car for at least two hours, Doc. 37, ¶¶28-30, then transported to the police station where she was interrogated for five hours. Id., ¶¶ 30, 58-60. Meeks and Scott first address investigatory stop cases, urging that there is no time limit on the duration of such stops. See, e.g., United States v. Sokolow, 490 U.S. 1, 7 (1989); Terry v. Ohio, 392 U.S. 1, 21 (1968). Those cases pertain to the investigation of criminal activity by the person detained, which is not the case here. Likewise, Haggerty v. Texas S. Univ., 391 F.3d 653 (5th Cir. 2004), and Brown v. Lyford, 243 F.3d 185 (5th Cir. 2001), are not apposite as they concern probable cause to believe that the person detained committed or was committing a crime.

Finally, Meeks and Scott urge that this case has "strong factual parallels" to Golla v. City of Bossier City, 687 F. Supp. 2d 645 (W.D. La. 2009), where an eleven hour detention was found to be not unreasonable. In Golla, the court recited that to assess the reasonableness of the detention of a non-suspect

12

witness, the court must look at the gravity of public concerns
served by the seizure, the degree to which the seizure served the
public interest, and the severity of the interference with the
individual liberty of the witness. 687 F. Supp. 2d at 657. The
court recognized that a ninety minute detention of a witness is
ordinarily too long, id. at 658 (citing Walker v. City of Orem,
451 F.3d 1139 (10th Cir. 2006)), but noted that Golla, the
witness detained, was intoxicated and belligerent and had
attacked an officer. Based on the unusual facts of the case, the
detention was not unreasonable. Id.

Here, based on the facts alleged by plaintiffs, a reasonable
officer would have known that Erin's detention under the
circumstances was unreasonable.

B.    Barnes

Barnes is alleged to have been one of the officers who
interrogated Erin for five hours and forced her to write out a
statement. Doc. 37, ¶¶ 28, 59. In support of his motion, Barnes
asserts that he is "unable to find any case that clearly
establishes that interrogating someone for five hours and forcing
them to write a statement clearly violates a clearly established
right" or any case that would put him on notice that such would
be the case. Doc. 45 at 2. That Barnes was unable to find the
Walker case, which puts ninety minutes at the outside of

13

reasonable detention of a witness, does not entitle him to
qualified immunity. See Elder, 510 U.S. at 512. Clearly, based on
the facts alleged, plaintiffs have stated a claim for violation
of Erin's rights under the Fourth and Fourteenth Amendments.
Dunaway v. New York, 442 U.S. 200 (1979).

C.   Goen, Walden, and Black

Goen, Walden, and Black were members of the NRH special
weapons and tactics team that responded to the call that John had
a gun and was holding his daughter. Plaintiffs allege that these
defendants shot John when he opened the door with Erin at his
side. These defendants maintain that they are entitled to
qualified immunity.

The elements of an excessive force claims are (1) an injury,
(2) that resulted directly and only from a use of force that was
clearly excessive, and (3) the excessiveness was clearly
unreasonable. Freeman v. Gore, 483 F.3d 404, 416 (5th Cir. 2007).
A use of deadly force is presumptively reasonable when an officer
has reason to believe that the suspect poses a threat of serious
harm to the officer or to others. Mace v. City of Palestine, 333
F.3d 621, 624 (5th Cir. 2003). The reasonableness is to be
determined from the perspective of the officer on the scene and
not with "the 20-20 vision of hindsight." Id. at 625 (quoting
Graham v. Connor, 490 U.S. 386, 396 (1989)). Further, that the

14

officer himself may have created the situation does not change
the analysis. In other words, that the officer could have handled
the situation better does not affect his entitlement to qualified
immunity. Young v. City of Killeen, 775 F.2d 1349, 1352-53 (5th
Cir. 1985). See also City & Cty. Of San Francisco v. Sheehan, 135
S. Ct. 1765, 1777 (2015)(failure to follow training does not
itself negate entitlement to qualified immunity).

In this case, plaintiffs have pleaded that John: was
bipolar, off his medication, took a gun from one location to
another, posed a threat to his mother, was alone with his
daughter who was trying to comfort him but had been unable to do
so, was greatly upset by a phone call from police, was upset by
police presence, opened the door on several occasions to shout at
police while possessing the gun with his daughter standing near
him, and was having a mental crisis that was escalating.
Plaintiffs do not dispute that John refused to obey police
commands to put down the gun. Under these circumstances, a
reasonable officer could have believed that John posed an
immediate threat to Erin or to the officer himself. See Ontiveros
v. City of Rosenberg, 564 F.3d 379, 385 (5th Cir. 2009); Reese v.
Anderson, 926 F.2d 494, 500-01 (5th Cir. 1991); Young, 775 F.2d
1349. Unlike the situation in Meadours v. Ermel, No. Civ. A. H-
04-102, 2005 WL 1923596 (S.D. Tex. Aug. 10, 2005), John had

15

threatened his mother, possessed a gun, and was becoming more
agitated. Whether he intended to harm his daughter or not, the
fact was that he kept her close to him at all times while
carrying the gun. Goen, Walden, and Black are entitled to
qualified immunity.

D.    Cities

NRH and Colleyville say that plaintiffs have failed to
sufficiently allege municipal liability. The court agrees.[2]
Plaintiffs have not alleged anything more than boilerplate
conclusory allegations without any specific facts to establish
the existence of a policy or a specific failure to train.
Although they urge that their claims against the cities should
not be dismissed because Colleyville has refused to provide
requested information, they do not specify what information they
have requested or how such information would support their
claims, much less enable them to plead with specificity. Rather,
it appears that plaintiffs hope that a fishing expedition will
provide some evidence to support their claims. Had there been
other instances similar to the one at issue, surely plaintiffs
would have learned of them through public sources. Plaintiffs do

---

[2]Plaintiffs appear to concede that this is the case. Doc. 46 at 3.

16

not describe any investigation they have undertaken other than the nebulous requests to defendants.

As further basis for the dismissal of the § 1983 claims against it, NRH notes that there could not have been a constitutional violation by it inasmuch as its officers did not use excessive force, i.e., did not commit a constitutional violation. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986). The court agrees.

With regard to the Americans with Disabilities Act ("ADA") and Rehabilitation Act claims, the statutes employ the same language and the remedies, rights, and procedures under each are the same. Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). The Fifth Circuit has ruled that these Acts do not apply in situations like the one present here. That is, they do not apply in the face of exigent circumstances; nor do they apply to responses to reported disturbances, whether or not those calls involve subjects with mental disabilities, before the officers secure the scene and insure that there is no threat to human life. Hainze, 207 F.3d at 801. Knowledge of a disability does not foreclose officers from protecting themselves and others. Sheehan, 135 S. Ct. at 1777.

Finally, Kathleen asserts a claim against NRH for deprivation of her property without due process of law. She is

17

apparently referring to property damage done when shots were
fired at John. There is no allegation that the damage was
intentionally caused, much less that it rises to the "shocks the
conscience" level required to state a constitutional claim. Cty.
of Sacramento v. Lewis, 523 U.S. 833, 849 (1998). Due process is
not implicated by a negligent act causing unintended loss or
injury. Daniels v. Williams, 474 U.S. 327, 328 (1986).
Plaintiffs' response appears to be that Kathleen is making a
takings claim. To do so, however, she would first have had to
seek compensation under state procedure, which she does not claim
to have done. See John Corp. v. City of Houston, 214 F.3d 573,
581 (5th Cir. 2000).

V.

Order

For the reasons discussed herein,

The court ORDERS that the motions of defendants Meeks,
Scott, and Barnes to dismiss be, and are hereby, denied.

The court further ORDERS that the motions of defendants NRH,
Goen, Walden, Black, and Colleyville be, and are hereby, granted,
and plaintiffs' claims against said defendants be, and are
hereby, dismissed.

The court determines that there is no just reason for delay
in, and hereby directs, entry of final judgment as to the

18

dismissal of plaintiffs' claims against defendants NRH, Goen,

Walden, Black, and Colleyville.

    SIGNED March 4, 2016.

JOHN McBRYDE
United States District Judge