IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

```
U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
        FILED

    JUN 1 7 2017

CLERK, U.S. DISTRICT COURT
By _____
          Deputy
```

ERIN LINCOLN, INDIVIDUALLY AND §
AS REPRESENTATIVE OF THE       §
ESTATE OF JOHN LINCOLN, ET AL., §
                               §
        Plaintiffs,            §
                               §
VS.                            §   NO. 4:15-CV-819-A
                               §
CITY OF COLLEYVILLE, TEXAS,    §
ET AL.,                        §
                               §
        Defendants.            §

<u>MEMORANDUM OPINION AND ORDER</u>

Came on for consideration the motion of defendants Kyle

Meeks ("Meeks") and Sandra Scott ("Scott") for summary judgment.

The court, having considered the motion, the response of

plaintiff Erin Lincoln, individually ("Erin"), the reply, the

summary judgment evidence, the record, and applicable

authorities, finds that the motion should be granted.

I.

<u>Background</u>

The allegations of plaintiffs' first amended complaint are

set forth in the court's memorandum opinion and order of March 4,

2016, Doc.[1] 65, and are not repeated here except to point out the

specific allegations made regarding movants. As the court noted

in the March 4 opinion, Erin is asserting that Scott in effect

_____

[1]The "Doc. __" reference is to the number of the item on the docket in this action.

arrested her and transported her to the Colleyville police
station and that Meeks interrogated her for five hours at the
police station following the shooting death of her father and
forced her to write out a statement. Doc. 65 at 11-12.

II.

### Grounds of the Motion

Meeks and Scott maintain that Erin cannot overcome their
qualified immunity defenses. That is, they contend that Erin
cannot show a Fourth Amendment violation and that the right was
clearly established at the time of the alleged misconduct.

III.

### Applicable Legal Principles

Qualified immunity insulates a government official from
civil damages liability when the official's actions do not
"violate clearly established statutory or constitutional rights
of which a reasonable person would have known." Harlow v.
Fitzgerald, 457 U.S. 800, 818 (1982).  For a right to be "clearly
established," the right's contours must be "sufficiently clear
that a reasonable official would understand that what he is doing
violates that right." Anderson v. Creighton, 483 U.S. 635, 640
(1987).  Individual liability thus turns on the objective legal
reasonableness of the defendant's actions assessed in light of
clearly established law at the time.  Hunter v. Bryant, 502 U.S.

2

224, 228 (1991); <u>Anderson</u>, 483 U.S. at 639-40.  In <u>Harlow</u>, the court explained that a key question is "whether that law was clearly established at the time an action occurred" because "[i]f the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful."  457 U.S. at 818.

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable.  <u>Siegert v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Duckett v. City of Cedar Park</u>, 950 F.2d 272, 276-80 (5th Cir. 1992).  In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. <u>Siegert</u>, 500 U.S. at 232.  Rather, the court must be certain that, if the facts alleged by plaintiff are true, a violation has clearly occurred.  <u>Connelly v. Comptroller</u>, 876 F.2d 1209, 1212 (5th Cir. 1989).

In assessing whether the law was clearly established at the time, the court is to consider all relevant legal authority,

whether cited by the parties or not.  Elder v. Holloway, 510 U.S. 510, 512 (1994). And, as the Fifth Circuit has noted:

> Although a case *directly* on point is not necessary, there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful. . . Abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context, rather, the inquiry must focus on whether a right is clearly established as to the specific facts of the case.

Vincent v. City of Sulphur, 805 F.3d 543, 547 (5th Cir. 2015)(citations omitted).

If public officials of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity.  Malley v. Briggs, 475 U.S. 335, 341 (1986); Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992). A mistake in judgment does not cause an officer to lose his qualified immunity defense.  In Hunter, the Supreme Court explained:

> The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." Malley, [475 U.S.] at 343. . . . This accommodation for reasonable error exists because "officials should not err always on the side of caution" because they fear being sued. . . .

502 U.S. at 229. Further, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." Malley, 475 U.S. at 341.

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. <u>Kovacic v. Villarreal</u>, 628 F.3d 209, 211 (5th Cir. 2010); <u>Foster v. City of Lake Jackson</u>, 28 F.3d 425, 428 (5th Cir. 1994). The test is demanding, <u>Vincent</u>, 805 F.3d at 547, and the hurdle significant. <u>Brown v. Lyford</u>, 243 F.3d 185, 189 (5th Cir. 2001). Qualified immunity is not to be denied unless existing precedent places the constitutionality of the defendant's conduct beyond debate. <u>Vincent</u>, 805 F.3d at 547.

IV.

## Analysis

The basis for Erin's claims against Meeks and Scott is that she was involuntarily detained for hours following the shooting death of her father by tactical officers. The summary judgment evidence, however, does not support that contention.[2] Erin says that she was never asked what she wanted to do. But, she never says that she told Meeks or Scott that she wished to leave the car or the room where she was being questioned. She makes only the conclusory allegation that "without her consent" she was transported to the police station and taken to a room and interviewed. Doc. 105 at 2. "I did not wish to, or consent to, be

---

[2]Meeks and Scott assume for purposes of their motion that Erin was being detained, but the issue of whether they violated Erin's constitutional rights turns on whether the detention was lawful.

involuntarily restrained, detained and interrogated until the early morning hours of the next day." Id. Meeks testified that it never crossed his mind that Erin was being involuntarily detained. Doc. 105 at 25. Erin did not ask any questions or argue or say she did not want to go to the police station. Doc. 105 at 32. As a police officer, he does not expect people to comply with what he tells them. Id. Rather, he expects people to protest if they do not like what he tells them is going to happen. Doc. 105 at 41. Scott testified that Erin never said anything to her. Doc. 105 at 53, 62. It never occurred to Scott that Erin might be being held involuntarily. Doc. 105 at 63. Scott believed Erin to be a cooperating witness. Doc. 105 at 66. Neither Meeks nor Scott saw Erin until long after the shooting and after she had been placed in a police car. Doc. 96 at 26, 30. Scott transported Erin to the police station. Doc. 96 at 26-27. Meeks and another officer interviewed Erin at the police station for approximately one hour and 43 minutes, which includes time Erin spent writing a statement. Doc. 96 at 31. At no time did Erin protest or say she wanted to leave or give any indication that she did not want to cooperate. Id.; Doc. 96 at 33; Doc. 105 at 75.

Officers arriving late to a scene take it as they find it. That is, they are entitled to assume that proper procedures have been followed and they are not required to second guess what has

earlier transpired. <u>White v. Pauly</u>, No. 16-67, 2017 WL 69170, at
*5 (U.S. Jan. 9, 2017). Thus, Meeks and Scott were entitled to
believe that there was probable cause to detain Erin or, as it
appeared to them, that she was a cooperating witness.
Investigative detention can be continued when based on consent.
<u>Dunaway v. New York</u>, 442 U.S. 200, 212 (1979). Erin has not
pointed to any summary judgment evidence to support the
contention that she was unlawfully detained. Nor has she cited
any authority to establish that every reasonable officer would
have known that she was being unlawfully detained. (The closest
she comes is an Alaska case decided more than two years after the
events giving rise to Erin's claims. <u>Estate of Tasi v.</u>
<u>Municipality of Anchorage</u>, No. 3:13-CV-00234-SLG, 2016 WL 370694
(D. Alaska Jan. 28, 2016).[3]) Accordingly, Meeks and Scott are
entitled to qualified immunity.

V.

<u>Order</u>

The court ORDERS that the motion for summary judgment of
Meeks and Scott be, and is hereby, granted; that Erin take
nothing on her claims against Meeks and Scott; and that Erin's
claims against Meeks and Scott be, and are hereby, dismissed.

---

[3]The court need not discuss other reasons that <u>Tasi</u> is not instructive in this case.

7

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the dismissal of Erin's claims against Meeks and Scott.

SIGNED January 17, 2017.

_____
JOHN McBRYDE
United States District Judge